**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALMA SANCHEZ, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 22 C 01852 |
| v. | Hon. LaShonda A. Hunt |
| EL-MILAGRO, INC. d/b/a EL MILAGRO, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alma Sanchez brought this putative class action against her employer, Defendant El Milagro, Inc., for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. § 5/2-101, *et seq.* Currently pending before the Court are: (1) Defendant's motion to dismiss Plaintiff's second amended class action complaint ("SACAC") (Dkt. 84); (2) Defendant's motion for summary judgment (Dkt. 133); and (3) Defendant's motion to deny class certification (Dkt. 137). For the reasons discussed below, Defendant's motions for summary judgment and to deny class certification are granted, and the motion to dismiss is denied as moot.

**BACKGROUND**[1]

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and undisputed unless otherwise noted. The Court notes, though, that the task of sorting through these materials was unnecessarily complicated by the parties' repeated failures to adhere to the requirements for Rule 56 submissions. Specifically, they routinely cited to materials that were not filed, stated facts without evidentiary support, stated facts but cited evidence that *did not* support the fact, and objected on grounds that the "fact was not supported by the cited evidence" when it clearly was. While Defendant points out Plaintiff's transgressions, both sides are guilty of such carelessness.

In July 2019, Plaintiff began working in a production department for Defendant, a tortilla product manufacturer and distributor. (Dkt. 145 at ¶¶ 4-5, 8, 24; Dkt. 152 at ¶ 1).[2] Defendant operates eight manufacturing locations throughout the state of Illinois and employs approximately 500 people. (Dkt. 145 at ¶ 8). Each location includes a production department where employees generally work on production lines. (*Id.* at ¶ 9). Employees on the "back line" operate machinery used to make the tortillas, while employees on the "front line" package and organize tortillas for sale. (*Id.*). For different shifts in the production department, certain employees are "supervisors" to whom employees on the shift report. (*Id.* at ¶ 16). According to Defendant, supervisors in the production department provide general direction to employees, but their job responsibilities are limited in that they cannot hire, fire, discipline, promote, or transfer employees; only the Human Resources Department ("HR") can make those decisions. (*Id.* at ¶¶ 17-18).

## I.     Defendant's Harassment Policies and Procedures

Defendant maintains an employee handbook, which includes a "Harassment Free Workplace Policy" and a "Policy Statement on Sexual Harassment." (*Id.* at ¶¶ 10-11). The "Harassment Free Workplace Policy" requires employees to immediately notify their "supervisor, HR, or any other member of management with whom [they] feel comfortable" when harassment occurs. (Dkt. 152 at ¶¶ 2, 6). The employee handbook, along with the policies contained in it, have been in place in their current form since at least 2013. (Dkt. 145 at ¶ 12). Plaintiff points out that a separate policy prohibiting sexual harassment was created in 2022. (*Id.*). When Plaintiff began her employment, she attended a two-day orientation program, during which she received a copy

---

[2] The Court refers to Plaintiff's Responses to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts as "Dkt. 145" and Defendant's Responses to Plaintiff's 56.1(b)(3)(C) Statement of Additional Facts as "Dkt. 152."

of the employee handbook. (*Id.* at ¶¶ 24-25). Upon receipt, Plaintiff acknowledged that she read and understood all policies included in the handbook. (*Id.* at ¶ 26).

Defendant contends that during her orientation, Plaintiff participated in sexual harassment prevention training. (*Id.* at ¶ 27). Defendant also maintains that it conducts annual sexual harassment training for all employees, with employee sessions lasting two hours and supervisor and manager sessions lasting three hours. (*Id.* at ¶¶ 20-22). According to Defendant, the extra hour of training for supervisors and managers focuses on how to deal with reports of sexual harassment and bystander intervention training. (*Id.* at ¶ 22). This annual sexual harassment training was held in at least 2021, 2022, and 2023. (*Id.* at ¶ 23).

If an employee makes a report of sexual harassment to a supervisor, the supervisor is tasked with obtaining statements, writing a report, and sending it to HR. (Dkt. 152 at ¶ 7). Upon receipt of a report of sexual harassment, HR personnel investigate. (Dkt. 145 at ¶ 13). Hortencia Calderon, Director of Human Resources, ultimately determines what discipline, if any, will be issued at the conclusion of an investigation. (*Id.*). Since July 1, 2019, Defendant has received over 25 reports of sexual harassment, which have resulted in varying disciplinary actions being implemented when necessary. (*Id.* at ¶¶ 14-15).

II.     **Comments and Physical Contact Between Plaintiff and Coworker Gutierrez**

Problems between Plaintiff and her coworker, Francisco Gutierrez, began as early as fall of 2019, when Gutierrez made comments about Plaintiff's disability. (*Id.* at ¶ 32). Following these comments, Plaintiff met with HR and subsequently obtained a doctor's note regarding certain work restrictions, which resulted in a change to her job duties. (*Id.* at 32). Rather than working on the production line, Plaintiff served as a "free person," which involved filling in temporarily on the production line, sweeping, and cleaning. (*Id.* at ¶ 33).

Plaintiff asserts that Gutierrez inappropriately touched her on three separate occasions. First, in approximately May 2020, she says that Gutierrez "rubbed his genitals" against her as he passed by and continued walking away. (*Id.* at ¶ 35). While Plaintiff admits she did not say anything to him at that time, she claims she gave him a look which suggested that she was uncomfortable. (*Id.* at ¶ 36). According to Plaintiff, Gutierrez walked away laughing, and she believed the conduct was intentional because there were many ways he could have avoided touching her. (Dkt. 152 at ¶ 4). Defendant, however, points out that in a statement written by Plaintiff, she said that Gutierrez apologized for this conduct. (*Id.*). Plaintiff asserts that she reported this conduct to her supervisor, Arturo Brito; nevertheless, she testified on one occasion that she *did not* mention Gutierrez by name to Brito and on another occasion that she *did* mention him by name. (Dkt. 145 at ¶ 37; Dkt. 152 at ¶ 5). Brito denies that any such report was ever made to him and, thus there is no basis to suggest that he failed to elevate the report to HR. (Dkt. 152 at ¶ 8).

In June or July 2020, Plaintiff maintains that Gutierrez touched her a second time, this time on the sides of her buttocks "very fast." (Dkt. 145 at ¶ 38). On one occasion, Plaintiff testified that Gutierrez grabbed her buttocks during this incident. (Dkt. 152 at ¶ 9). But Plaintiff also testified on different occasions both that she did report this conduct to Brito the day after it happened *and* that she could not report this conduct because it was during the pandemic and the plant was closed. (Dkt. 145 at ¶ 40; Dkt. 152 at ¶ 9). Brito did not investigate or escalate this complaint to HR, which Defendant contends is because Plaintiff again did not report the conduct. (Dkt. 152 at ¶ 10).

Finally, Plaintiff maintains that at the end of August 2020, Gutierrez grabbed her buttocks for a short time as Plaintiff was holding a box. (Dkt. 145 at ¶ 41). Gutierrez apologized afterwards. (*Id.*). Plaintiff admits that she does not know whether Gutierrez contacted her buttocks with the front or back of his hands. Plaintiff also testified both that Gutierrez touched her with both hands

4

*and* only one hand. (Dkt. 152 at ¶ 11). No employee witnessed Gutierrez touch Plaintiff. (Dkt. 145 at ¶ 43). However, Plaintiff's coworker, Rafael Ortega, noticed Plaintiff was upset after the incident, asked her what had happened, and told her that she should inform the line supervisor who would tell Brito. (Dkt. 152 at ¶ 11).

Plaintiff concedes that August 30, 2020—after the third incident—was the first time she asked to have a written report made to HR regarding Gutierrez touching her, but contends that prior to this date, she did not know that she could make a written report or that she had to go to HR. (Dkt. 145 at ¶ 44; Dkt. 152 at ¶ 12). Plaintiff claims that when she asked Brito to make the report to HR, he asked Plaintiff if she was aware that doing so could cause problems. (Dkt. 145 at ¶ 45; Dkt. 152 at ¶ 14). Because Plaintiff wanted to proceed, she, Gutierrez, and Brito all wrote statements about the incident that were provided to HR. (Dkt. 145 at ¶¶ 45-47; Dkt. 152 at ¶¶ 14, 16). Plaintiff's statement detailed the three incidents of physical contact by Gutierrez, pointed out that it could not be accidental because no one else was being touched and no one was touching Plaintiff besides Gutierrez, and he had done it repeatedly. (Dkt. 152 at ¶ 15).

In early September, HR met with Plaintiff about her report. (Dkt. 145 at ¶ 48). Plaintiff did not identify any witnesses who may have observed Gutierrez's conduct in August 2020. (*Id.* at ¶ 51). Gutierrez was asked to respond to Plaintiff's complaints of alleged harassment in May, June/July, and August, and while he did admit making a comment to Plaintiff about her disability, he denied engaging in sexual harassment. (*Id.* at ¶ 53). Following the investigation, which resulted in a determination by HR that Plaintiff had not been sexually harassed, Gutierrez nevertheless received a letter advising that he had "one last job opportunity," he was expected to comply with Defendant's policies, and further violation of Defendant's policies could result in termination. (Dkt. 145 at ¶¶ 56-57; Dkt. 152 at ¶¶ 17, 20). Gutierrez signed the letter on September 7, 2020.

5

(Dkt. 145 at ¶ 58). On September 16, 2020, Plaintiff received a letter informing her that the case was closed, that Gutierrez received a letter requiring him to change his behavior, and that she should contact HR to report any further harassment complaints. (Dkt. 145 at ¶¶ 59-60; Dkt. 152 at ¶ 18). Plaintiff admits that, since then, Gutierrez has not engaged in any conduct Plaintiff considers to be sexually harassing. (Dkt. 145 at ¶ 61). Plaintiff contends, however, that she did report sexual harassment by other employees on two occasions after August 30, 2020. (Dkt. 145 at ¶ 62).

**III.**      **Verbal Statements Made To and Around Plaintiff**

After the incidents with Gutierrez, Plaintiff asserts that other employees engaged in verbal "taunting" and made sexual remarks on a near daily basis. (Dkt. 145 at ¶ 71; Dkt. 152 at ¶ 3). Specifically, one employee, Jose Guzman, allegedly told Plaintiff that other employees could "grab [Plaintiff's] butt," because Gutierrez did it and did not get fired. (Dkt. 145 at ¶ 72). In addition, Guzman and three other employees allegedly made sexual remarks that were not directed at Plaintiff but that she overheard, including "she isn't even that hot; it isn't worth it," "why don't you fuck this one," "look how big mine is," and "I fucked twice." (Dkt. 145 at ¶¶ 73-74; Dkt. 152 at ¶ 3). Plaintiff claims she reported these sexual comments to Brito, but did not provide Brito or HR with the names of the employees who made the comments. (Dkt. 145 at ¶¶ 72-73, 76; Dkt. 152 at ¶¶ 3, 25). Plaintiff states that she has come to believe reporting does not help. (Dkt. 145 at ¶ 77). Even so, since August 2020, Plaintiff has reported six other complaints to HR, none of which involved sexual harassment. (*Id.* at ¶ 79). As far as the Court is aware, Plaintiff continues to be employed by Defendant and work the same shift, in the same department, at the same location, and report to the same supervisor, Brito, as she did when she began her employment with Defendant. (Dkt. 145 at ¶¶ 4, 29-30; Dkt. 152 at ¶ 2). Plaintiff does maintain that because of the

alleged harassment, she has sought out counseling and been prescribed anti-anxiety medication. (Dkt. 152 at ¶ 26).

IV.     **Procedural History**

In November 2021, Plaintiff submitted a charge of discrimination to both the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") based on "sexual harassment" from "June 2020-Present." (Compl., Ex. A, Dkt. 79-1). Plaintiff was issued a "Notice of Opt Out of the Investigative and Administrative Process, Right to Commence an Action in Circuit Court or Other Appropriate Court of Competent Jurisdiction, and Order of Administrative Closure" from the IDHR on December 6, 2021 (Compl., Ex. B, Dkt. 79-1), and a right to sue letter from the EEOC on December 27, 2022. (Compl., Ex. C, Dkt. 79-1). Plaintiff filed her original class action complaint in the Circuit Court of Cook County on January 11, 2022, which Defendant removed to federal court on April 8, 2022. (Notice of Removal at ¶ 1, Dkt. 1). Plaintiff later moved for and was granted leave to amend her complaint in July 2022.[3] (Dkts. 35, 37). Following her receipt of a right to sue letter from the EEOC, Plaintiff sought leave to file a second amended complaint in March 2023. (Dkt. 69). The court granted the motion over Defendant's objection in May 2023; thus, the SACAC is the operative complaint. (Dkt. 78).

Defendant subsequently filed a renewed motion to dismiss the SACAC in June 2023, arguing that Plaintiff failed to exhaust administrative remedies. (Dkt. 84). At the parties' request, the Court also set a deadline of February 9, 2024 for any motion for class certification (Dkt. 130). Once Plaintiff declined to pursue class certification, Defendant filed separate motions for summary judgment (Dkt. 133) and to deny class certification (Dkt. 137). All motions are fully briefed and ripe for ruling.

---

[3] This case was reassigned from Judge Blakey to the calendar of Judge Hunt on June 2, 2023. (Dkt. 83).

**LEGAL STANDARD**[4]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. All "justifiable" inferences are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted). Finally, "speculation may not be used to

---

[4] As discussed *infra*, because Plaintiff elected not to seek class certification, the Court does not address in detail the standards under Federal Rule of Civil Procedure 23. Similarly, given that Defendant's motion for summary judgment raises the same exhaustion argument as the pending motion to dismiss, the Court considers the dispositive summary judgment motion.

manufacture a genuine issue of fact" to defeat summary judgment. *Amadio v. Ford Motor Co.*, 238

F.3d 919, 927 (7th Cir. 2001).

**DISCUSSION**

**I.    Defendant's Motion to Deny Class Certification**

Defendant moved to deny class certification after Plaintiff indicated that she was

proceeding on her claims only. Defendant argues that Plaintiff's proposed class cannot be certified

because it fails to meet Rule 23's requirements of commonality, typicality, and adequacy of

representation, and that common questions do not predominate over individualized ones. (Def.

Mem. in Supp. at 8-15, Dkt. 138).[5] Rather than contesting Defendant's substantive arguments,

Plaintiff responds that the motion should be denied as moot because Plaintiff did not move for

class certification by the Court ordered deadline and she affirmatively stated that she did not intend

to do so in an email to defense counsel on February 8, 2024. (Pl. Resp. at 2-4; Ex. A, Dkts. 143,

143-1). Consequently, Plaintiff contends the class allegations in the SACAC should be stricken.

(*Id.* at 3-4). Defendant disagrees and  highlights the fact that the class claims in Plaintiff's SACAC

remain pending, Plaintiff has not suggested that granting the motion would prejudice her in any

way, and neither party has moved to strike the class claims. (Def. Reply at 2-3, Dkt. 150).

Defendant has the better argument. Even though Plaintiff did not file a motion for class

certification and has affirmatively stated that she is not seeking to certify a class, the operative

complaint still includes live class claims. Consequently, the Court grants Defendant's motion to

deny class certification based solely upon Plaintiff's voluntary concession that the litigation no

longer encompasses putative class claims. *See, e.g.*, *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-

---

[5] Unless otherwise noted, page numbers in citations are the page number on the CM/ECF header of the filing, not the page number at the bottom of the page.

9

cv-04213-MDH, 2018 WL 9868535 (W.D. Mo. Apr. 4, 2018) (granting motion to deny class certification where plaintiff's opposition to the motion "[made] it clear that he [had] no intention of pursuing class certification in this matter, and he [made] no argument that granting this motion prejudice[d] him in any fashion" and stating that "[t]he Court [saw] little reason to deny Defendant's motion," as "[g]ranting it merely set[] in stone what [was] already understood: [plaintiff would] not pursue his claims on behalf of a class.").

## II.    Defendant's Motion for Summary Judgment[6]

Defendant contends that summary judgment is warranted on Plaintiff's sexual harassment claims[7] based on five grounds: (1) the conduct Plaintiff cites to was not severe, pervasive, or objectively unreasonable as a matter of law; (2) Plaintiff cannot demonstrate employer liability; (3) even if Plaintiff could demonstrate a genuine issue of material fact, the *Ellerth*/*Faragher* affirmative defense shields Defendant from liability; (4) Plaintiff failed to exhaust administrative remedies; and (5) Plaintiff's claim of punitive damages is legally untenable. (Def. Mem. in Supp., Dkt. 134). The Court agrees that Plaintiff has not identified objectively severe or pervasive conduct to establish liability; therefore, her claims fail.

Plaintiff maintains that she suffered sexual harassment in the workplace that was severe or pervasive enough to create a sexually hostile work environment. "To succeed on a hostile work

---

[6] In her response to Defendant's motion for summary judgment, Plaintiff argues that the motion is untimely and therefore should not be considered. (Pl. Resp. at 6-8, Dkt. 144). The Court disagrees. The briefing schedule set by the Court addressed class certification motions only (Dkt. 130), as that was the only proposal included in the final status report to the Magistrate Judge (Dkt. 128). Since the Court previously struck all deadlines set by Judge Blakey (Dkt. 93) and typically considers summary judgment schedules only after the close of *all* discovery, a new deadline had never been set. Furthermore, Defendant is correct that in light of plaintiff's anticipated request for class certification, additional class discovery was contemplated. As such, the motion was not filed late. If Plaintiff truly believed that Defendant's Rule 56 motion was not properly before the Court, she should have immediately moved to strike it. Now that the matter is fully briefed, it would be a waste of time, money, and scarce judicial resources to disallow the motion at this juncture.

[7] Claims of sexual harassment under the IHRA are analyzed in the same fashion as those brought under Title VII. *Frey v. Hotel Coleman*, 141 F. Supp. 3d 873, 879 (N.D. Ill. Oct. 9, 2015).

environment claim, 'a plaintiff must show that she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability.'" *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021) (citing *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018) (internal quotations and citation omitted)). The conduct must be severe *or* pervasive; it need not be both. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). But the conduct does have to be both objectively and subjectively severe or pervasive. *Howard*, 989 F.3d at 600. In other words, the conduct needs to be of such character that "a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Hostetler*, 218 F.3d at 807.

"To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009). The Court must consider all the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Howard*, 989 F.3d at 600 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Because this analysis is based on the totality of the circumstances, "employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). Further, "[a]lthough a bright line does not exist separating innocuous from actionable behavior . . . isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002).

11

The first and second requirements—that Plaintiff was subjected to unwelcome sexual conduct, advances, or requests because of her sex—are not in dispute. Rather, Defendant contends that Plaintiff's claims fail at the third and fourth requirements—that the conduct was not severe or pervasive and that there is no basis for employer liability. There is no question, and the parties do not dispute, that Plaintiff subjectively believed this conduct to be severe and/or pervasive. As a result of the workplace incidents, she sought out counseling and was prescribed anti-anxiety medication. But Plaintiff has not, and cannot, demonstrate that the conduct she describes meets the objective standard to demonstrate a sexually hostile work environment.

Plaintiff complains of three instances of physical contact by her coworker Gutierrez—when he allegedly rubbed his genitals against her, touched her buttocks, and grabbed her buttocks. This conduct spanned over the course of four months. Plaintiff also points to an instance of verbal harassment that was directed to her and to general sexual comments in the workplace, which she overheard but were not spoken to her. While this conduct is undoubtedly inappropriate and distasteful, it does not support her claim of a sexually hostile work environment.

As Defendant indicates, courts frequently hold that circumstances far more egregious than those present in this case fail to qualify as objectively severe or pervasive harassment. *See, e.g.*, *Swyear*, 911 F.3d at 880-83 (rejecting claims where the plaintiff overheard vulgar nicknames and discussions about a coworker's romantic relationships in the workplace, and had a coworker crawl into her bed in a hotel); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 528-535 (7th Cir. 1993) (holding plaintiff could not satisfy objective prong where a coworker touched the plaintiff's leg more than once at a bar, kissed the plaintiff as they left the bar, and lunged at her from bushes the following day); *Hilt-Dyson*, 282 F.3d at 459-464 (holding that the plaintiff, a female police officer, failed to establish an actionable claim when her commanding officer stared at her chest and made

12

her raise her arms during a uniform inspection and rubbed her back twice when "[o]n each occasion, the back rubbing incident was brief and involved no threats, intimidation or humiliation.").

On the other hand, the cases Plaintiff relies upon to support her claims are readily distinguishable. For example, Plaintiff cites *Bakersville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995), for the proposition that the Seventh Circuit "categorically held that physical contact of a sexual nature, whether amorous or hostile, for which there is no consent express or implied, constitutes actionable sexual harassment." (Pl. Resp. at 8, Dkt. 144). She is mistaken. While *Bakersville* recognized the difficulty in drawing lines in cases such as these, *id.* at 430-31, no such categorical rule was announced. Indeed, since the *Bakersville* decision in 1995, the Seventh Circuit has considered *many* cases in which physical, sexual conduct fails to constitute sexual harassment. *See, e.g.*, *Adusumilli v. City of Chi.*, 164 F.3d 353, 357-362 (7th Cir. 1998) (holding that verbal teasing and "four isolated incidents" of touching plaintiff's arm, fingers, or buttocks failed to establish harassment).

Plaintiff also cites *Patton v. Keystone RV Co.*, 455 F.3d 812 (7th Cir. 2006), where the plaintiff demonstrated objective harassment when her coworker slid his hand up plaintiff's shorts and reached her underwear, told her that her legs were smooth, placed his hand on plaintiff's calf, placed his arm on plaintiff's back and his hand near her neck, whispered "let's get a drink" in plaintiff's ear, and wrapped his arm around plaintiff's waist, placing his hand near her buttocks, all over the course of one month. But the conduct here does not come close to that level. Likewise, Plaintiff's reliance on *Hostetler*, 218 F.3d at 801-809, where the plaintiff's coworker held her face and forcibly kissed her, is equally misplaced.

The Court acknowledges the challenge in determining when harassing behavior is actionable or not. But in the instant case, there is no genuine dispute that this conduct falls into the latter category. Plaintiff was unfortunately subjected to unwanted touching outside of her clothes (unlike the plaintiff in *Patton*). The first incident involved Gutierrez brushing up against Plaintiff and, while she believes such conduct could have been avoided, she also acknowledged that he apologized. Plaintiff provides no evidence that the conduct lasted more than a couple seconds or that she did not feel like she was in control during the incident (unlike the plaintiff in *Hostetler* who, undoubtedly, was not). Further, Plaintiff admits that the second incident was "very fast," and the third incident lasted a short time. In fact, regarding the third incident, Plaintiff does not know whether Guttierez made contact with her buttocks with the front or back of his hands. And as with the first incident, Plaintiff does not suggest that she did not feel that she was in control during the second or third incidents.

Unlike *Patton*, where all the incidents occurred over the span of one month, the three times Gutierrez allegedly had contact with the Plaintiff occurred over the span of around four months. And while Plaintiff was clearly offended by his behavior, the record does not support a finding that these incidents affected her work performance at all. Indeed, she continues to work in the same location, in the same department, on the same shift. In sum, this case presents isolated incidents of brief physical contact, which the Court concludes was not objectively severe or pervasive.

Plaintiff fares no better when her claims of physical harassment are considered with her statements about verbal harassment, including sexual comments directed towards her and others that she overheard in the workplace. It is well established, as Defendant argues, that "unwanted sexual comments and gossip" are not "objectively offensive" to support a finding of a sexually hostile work environment. (Def. Mem. in Supp. at 9). *See, e.g.*, *Passananti v. Cook Cty.*, 689 F.3d

14

655, 667 (7th Cir. 2012) ("We also assume employees are generally mature individuals with the thick skin that comes from living in the modern world."); *Yuknis v. First Student, Inc.*, 481 F.3d 552, 556 (7th Cir. 2007) ("The American workplace would be a seething cauldron if workers could with impunity pepper their employer and eventually the EEOC and the courts with complaints of being offended by remarks and behaviors unrelated to the complainant except for his having overheard, or heard of, them. . . . Title VII is not a code of civility."); *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999) ("It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory.").

Certainly, the comments made by Plaintiff's coworkers, both directly to Plaintiff and in general, were vulgar and boorish. Coupled with the uninvited touching by Gutierrez, Plaintiff understandably felt that she has been subjected to a sexually hostile work environment. But viewing the situation from an objective standard, even when drawing all reasonable inferences in her favor and considering the totality of the circumstances, what Plaintiff describes fails to clear the hurdle to meet the objectively severe or pervasive standard so as to create a hostile work environment. As such, Defendant is entitled to judgment as a matter of law on Plaintiff's sexual harassment claims.[8]

---

[8] While the Court need not address Defendant's further contentions regarding employer liability, the Court acknowledges that Defendant's harassment reporting policy, Brito's job title of "supervisor," and Plaintiff and Brito's competing claims about whether she reported certain conduct to him that should have been escalated to HR may raise factual disputes. Nevertheless, since Plaintiff failed to get beyond the first prong of the test, there is no need to consider these points (or any of Defendant's other arguments) further.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to deny class certification is granted, Defendant's motion for summary judgment is granted, and Defendant's motion to dismiss is denied as moot. Judgment is entered in favor of Defendant.

**DATED**: November 12, 2024                    **ENTERED**:

LaShonda A. Hunt

LASHONDA A. HUNT
United States District Judge